John T. Ellis II, Esq. Informal Opinion Counsel No. 2003-1 Village of Tupper Lake 44 Park Street Tupper Lake, New York 12986-1617
Dear Mr. Ellis:
You have asked whether the Chief of Police of the Village of Tupper Lake is permitted to carry a handgun and to wear a uniform and badge although he is not currently certified by the Municipal Police Training Council as having met fitness and training requirements set by statute for police officers.
We conclude, in accord with a prior opinion of this office, that the Police Chief may not carry a handgun under these circumstances without obtaining a personal license for such weapon. However, we have not identified any state law or regulation that prohibits the Chief from wearing a uniform and badge that properly identify him as police chief.
Under state law, the Municipal Police Training Council ("MPTC") is responsible for promulgating rules regarding physical fitness and training requirements for police officers. See
Executive Law § 840(1), (2). To qualify for appointment to the police force of a municipal government, a police officer must complete an approved municipal police basic training program and become certified by the MPTC. General Municipal Law §209-q(1)(a); see also Civil Service Law § 58(1)(a), (c) (setting age requirements and requiring satisfaction of MPTC's physical fitness and training requirements for civil service appointment as police officer). Such certification remains valid during the police officer's continuous service as a police officer and for up to four years after an interruption in service. See id. § 209-q(1)(b). Police chiefs and other supervisory personnel are expressly excluded from these fitness and training requirements.See Civil Service Law § 58(3); Executive Law § 835(7); General Municipal Law § 209-q(2)(a).
You report that the Chief of Police was hired by the Village of Tupper Lake on January 4, 1999, five years after his retirement from duty in law enforcement with the City of Watertown. Consequently, because he experienced an interruption in service greater than four years, his prior certification is no longer valid. You have also indicated that the Police Chief has not obtained re-certification since his appointment with your Village.
As you are aware, we have previously considered the issue whether a police chief who has not met the fitness and training requirements for police officers is entitled to carry a handgun. Op. Atty. Gen. No. 85-F12. In that opinion, we reasoned that because police chiefs are exempt from the age, height, weight, physical fitness and training requirements of Civil Service Law § 58, Executive Law § 835 and General Municipal Law § 209-q, the Legislature did not intend to include such civilian supervisors within the definition of "sworn officer" for purposes of the Criminal Procedure Law. Id. We therefore concluded that the enumeration of duties and powers of police officers set forth in the Criminal Procedure Law, including the exemption from licensing requirements for handgun possession and the power to execute arrest and search warrants, make arrests without a warrant and use physical or deadly force in making an arrest when necessary, did not apply to police chiefs and other supervisory personnel who did not meet the physical fitness and training requirements applicable to police officers. Id. As we stated:
 We do not believe that it was the Legislature's intent that supervisors, untrained and unqualified as police officers, carry weapons without licensure and exercise the law enforcement powers of police officers. Obviously, the required training, physical, fitness and other requirements for police officers are to ensure that their important public safety functions are performed responsibly. Through the exemptions in the Civil Service Law, Executive Law and General Municipal Law, we believe the Legislature intended to permit skilled administrators to hold supervisory posts in municipal police departments, even though they may be ineligible or have not qualified for status as police officers.
Id. Thus, under the reasoning of our earlier opinion, the Chief of Police may not lawfully carry a firearm without a license if he is not certified as a police officer by the MPTC.
There is nothing, however, that prohibits the Chief of Police, as a member of the village police department, from wearing a uniform and a badge. No state laws or regulations govern the uniforms or identification materials worn by local law enforcement officers.[1] Rather, the only state-wide public policy concerning police uniforms is found in the provisions of the Penal Law defining the crimes of impersonation of a police officer and unauthorized sale of a police uniform. See Penal Law § 190.25,190.26, 190.27. Under Penal Law § 190.26 (criminal impersonation in the second degree) it is illegal for an unauthorized person to wear a police uniform or wear or display an official police badge with the intent to induce another person to submit to or act in reliance upon such pretended authority.[2] It is also unlawful for any person to sell a police uniform to someone who is not authorized by a police department to purchase it. Penal Law § 190.27. This law was designed to thwart persons seeking to use such uniforms to impersonate police officers. See William C. Donnino, Practice Commentary to Penal Law § 190.27 (McKinney's 1998). Thus, it is clear that the police chief may not wear the uniform or badge in order to exercise greater authority than is provided under the law for his level of fitness and training. Inasmuch as the chief (unless certified as a sworn officer) is not authorized to execute warrants, effectuate warrantless arrests, or exercise other powers of a sworn officer, the uniform or badge will not give him such authority. A uniform and a badge simply provide a means to identify the wearer as a member of a police department.
We therefore conclude that because there is no requirement that only department members who are certified sworn police officers be permitted to wear uniforms or other identifying insignia, the Tupper Lake Police Department can allow the Chief of Police to wear the uniform and badge of the department.
The Attorney General renders formal opinions only to officers and departments of state government. This perforce is an informal opinion and unofficial expression of the views of this office.
Very truly yours,
LAURA ETLINGER, Assistant Solicitor General
In Charge of Opinions
By:_____________________________
MARLENE O. TUCZINSKI
Assistant Solicitor General
[1] In contrast, the uniforms and badges of certain other law enforcement officers and private security personnel are subject to state regulation. See, e.g., General Business Law § 80 (badge and insignia of licensed watch, security guard and patrol agency personnel); 9 NYCRR 495.1 (official insignia of state, county and city civil defense agencies); 21 NYCRR 5.12, 5.13 (badges and uniforms for port watchman licensed by Waterfront Commission of New York Harbor).
[2] Criminal impersonation in the first degree includes the additional element that the wearer commit or attempt to commit a felony while pretending to be a police officer. Penal Law §190.26.